Thank you. May it please the Court, my name is Jim Bopp. I'm the attorney for Plaintiff Human Life of Washington, and I'd like to reserve five minutes for rebuttal. This case involves a First Amendment challenge to four provisions of Washington State's campaign finance law that seeks to unconstitutionally regulate issue advocacy and the organizations that engage in issue advocacy. In Wisconsin Right to Life 2, the U.S. Supreme Court held that issue advocacy, quote, conveys information and educates. It may impact elections, but only when the voter, quote, uninvited, end of quote, factors it into their voting decision. This is to be contrasted with express advocacy or electioneering communications, which the Court has held in McConnell to be the functional equivalent of express advocacy, which are campaign speech which may be regulated. However, Wisconsin Right to Life 2 held that the Court has never recognized a compelling interest in regulating ads that are neither express advocacy nor its functional equivalent, that is, an electioneering communication provision. And, of course, Washington does not have an electioneering communication provision. Furthermore, the Court's major purpose test protects issue advocacy organizations from PAC requirements. Washington State's provisions violate all of these limitations. First, this case is subject to strict scrutiny. The United States Supreme Court in Citizens United handed down just a few months ago reaffirmed that imposing PAC requirements on an organization creates a severe and onerous burden that triggers strict scrutiny because they are, quote, expensive to administer, end of quote, and, quote, are subject to extensive regulation, end of quote. They also held that requiring an organization to be a PAC in order to engage in political speech operates as a prior restraint. I say reaffirmed because the U.S. Supreme Court in Austin, then in Buckley, then in McConnell all held the same. That is, requiring political speech to be conducted under a PAC or, here, defining the organization as a PAC if engages in political speech triggers strict scrutiny. And one of the vehicles that the Court uses to protect those organizations from PAC requirements is the major purpose test. Now, the major purpose test, as explained in Buckley, provides that for an organization to be regulated by PAC requirements, its major purpose must be the election or nomination of candidates for office. Or, in this context, as this Court has held in California Pro-Life Council 1 and California Pro-Life Council 2, the major purpose of advocating for candidates for office is to ensure that the organization is regulated by PAC requirements. And, therefore, advocating the passage or defeat of a ballot measure. Now, counsel, is your argument that strict scrutiny is required because of who is being regulated, namely a PAC, or is strict scrutiny imposed because of what is being regulated, namely finance limits and those sorts of things, that strict scrutiny has to be used only if there's a prohibition involved? Well, no, because, well, this does operate as a prohibition. Human Life of Washington is prohibited from engaging in political speech unless they register as a PAC. If they register as a PAC, then they can engage in that speech. But registering as a PAC under all of these cases, including most recently Citizens United, imposes a severe and onerous burden on the organization. So, as I understand your argument, strict scrutiny is always required if there's any disclosure requirement. No. Well, that may or may not be true, and there is certainly some dispute among the precedents on that question. But I'm not talking about disclosure. I'm talking about PAC requirements. PAC requirements go way beyond a disclosure report. The Washington regulations don't require the full panoply of PAC requirements on organizations such as the plaintiff here. They do. They require everything that Citizens United identified as being in PAC burdens. The Washington state law requires the appointment of a treasurer, keeping detailed records, and preserving the receipts, and filing an organizational statement, and filing regular detailed reports on all the contributions and all the expenditures of the organization. Periodically, ad infinitum, each of those that I just said was in Citizens United. Each of those are required by the state of Washington's PAC requirements. Doesn't it require less on an organization like yours engaged in issue advocacy than it requires of actual PACs? Your organization has a PAC related. It does have a PAC. Right, and that has to comply with a lot more regulations than what is being imposed if you want to participate on a particular issue that's imminently before the electorate. Okay, the PAC that the organization currently has is a candidate PAC. And there are, it is true, additional limitations on candidate PACs that are not imposed on PACs that are involved in ballot measures. But every one of the burdens that Citizens United identified as triggering strict scrutiny, that they identified as being onerous and severe, every one of those are applicable to a ballot measure PAC. And so it's not just a disclosure report, that is a one-time, one-page report that is reporting on the expenditure involved, the political expenditure, and any contributions associated with that. But it's comprehensive regulations of the entity, and requires reporting not of just its political activity, but of every contribution over a threshold and every disbursement that it makes, regardless of what it's for. So, you know, in MCFL, the court, of course, in MCFL, they had a PAC. But they still said you can't require the issue advocacy group to become a PAC, even though it had a PAC. And it said that the disclosure interest was satisfied by this one-page report about any of its specific political activity. But, Mr. Bopp, I think you're incorrectly reading Citizens United when you say that it requires strict scrutiny, because it actually adopted the exacting scrutiny requirement from Buckley. That is for the one-page, the one-page disclosure report that is required for electioneering communications under federal law. That is the report. Okay, Mr. Bopp, let me ask you a question just along the lines of Judge Ward laws. But take it back to like an elections law 101 stage. You know, is there a difference in exact scrutiny and strict scrutiny? And in the election or ballot measure context, when do we apply one and when do we apply the other? Well, this court has held twice in California Pro-Life Council 1 and 2 that strict scrutiny is required for imposition of PAC requirements to a ballot measure PAC. I think that's a really misleading answer. What the Supreme Court said was that you apply exacting scrutiny for disclaimer and disclosure requirements. Yes, and that is for... And isn't that what's being required by the Washington law? No, not when you define the whole organization as a PAC. When the whole organization is defined as a PAC, it has to comply with all of these things. And earlier in the opinion, they address in Citizens United, earlier in the opinion than the end which you are referencing, they discuss the issue of whether or not you could require this activity to be done by a PAC. That's where the court said requiring it to be done by a PAC is onerous, is severe, triggers strict scrutiny. They specified the PAC burdens, which are the identical burdens that are imposed by the state of Washington. When they got to the end of the opinion, which you are referencing, the disclosure requirement was a one-page report that is to be filed when you spend more than $10,000 on an electionary and communication. It's a one-page report. All you report is the expenditures on that electionary and communication, and you report any contributors that are over $1,000 to the organization. That is what they approved. I think you're reading Citizens United really narrowly because what Citizens United did was basically say we're going to do away with spending limitations, but we're going to replace them with disclosure, disclaimer, and that's going to be the way that we're going to find that it's constitutional to proceed. But not PAC disclosure. I'm having trouble understanding what you're referencing by PAC disclosure. Do you have a page in sight for me? Well, I wish I did. We cited in our brief and we had the slip opinion. What is so much more burdensome about what is being required that the organization doesn't already keep track of? Well, they may or may not keep detailed records. That's up to them. They may or may not preserve receipts. They are certainly not required to file an organizational report, and they certainly are not required to file regular reports with the government on all of their receipts and expenditures. Why would it be burdensome? It's burdensome because those, as the Supreme Court in Citizens United said, that it, quote, is expensive to administer, end of quote, and is, quote, subject to extensive regulation, end of quote. It also operates as a prior restraint because you go to jail unless you create this or become this, in this case. You become this before you engage in any of your expenditures. So it's burdensome because it's burdensome. It's burdensome because it's burdensome. It's a matter of law. You don't have to have evidence of it. The court held in Citizens United that requiring these six things that I just repeated that are attendant to being a PAC under federal law are the identical things that are attendant to being a PAC under Washington state law. And if you will notice, certainly three of them are not disclosure requirements. Appointing a treasurer is not a disclosure requirement. Keeping detailed records is not a disclosure requirement. Preserving receipts is not a disclosure requirement. It's fairly related to disclosure. How can you disclose all of that if you're not doing that? You could file the report and dispose of them. But, you know, I'm not making this stuff up. This is right there in the opinion. They need something to have. If you're going to impose disclosure requirements, then you have to, in order to ensure they're being correctly complied with, you have to have certain ancillary requirements, such as record-keeping, receipts, documents to back it up. I mean, you're not suggesting that a disclosure requirement would be effective if you couldn't hold the entity accountable by auditing its disclosure. For the one-page report that Citizens United approved, there is no such record-keeping requirement. There are no receipt requirements. There is none of that. There's no requirement to appoint a treasurer. There's no requirement to file an organizational statement. None of that is required for the one-page report that the Citizens United approved for conducting an electionary communication. And furthermore, the report only requires the disclosure of the political activity, that is, the electionary communication. So you can have a multimillion-dollar organization that spends $10,000 on electionary communication. The difference between PAC reporting and an EC report is the EC report reports only on the $10,000 expenditure. PACs have to report the million dollars of expenditure, million dollars. So that goes way beyond the disclosure that is justified, that is, the disclosure of the political activity. And that's why the court in MCFL upheld, said you cannot require mass citizens to be a PAC because the one-page report on an electionary communication solves the government's need for disclosure on political activity. You don't need to yell at us. We can hear you. I'm sorry if I sound like I'm. I mean, it's very loud. I'm sorry if I sound. We can hear you. We're very close. We're about five feet. All right. Sorry about that. Is one of your positions based on an argument that the government here at the State of Washington does not have a legitimate informational interest with respect to issue advocacy organizations? Yes. They do not have any informational interest. The court has repeatedly protected organizations against disclosure either in one-page reports or through PAC reporting. They protect an organization that engages in issue advocacy by the major purpose test. In other words, you can't be a PAC unless it's your major purpose to engage in that activity.  For instance, and then the elect. Well, you converted it back to a PAC. I'm trying to see whether I understand your position with respect to whether the government has a legitimate interest, an informational interest with respect to issue advocacy organizations that do indeed advocate based upon issues, not a campaign, but issues. And your argument is no, the government has no legitimate interest to have the public informed with respect to issues support. That's true. And let me make sure that we understand each other. I'm not talking about ballot measures. I'm talking about initiatives. And I'm not talking about initiatives or referendums. Sometimes that word is used to refer to initiatives and referendums. And I do agree that if an organization's major purpose is to support or oppose a referendum, then the government can require that organization to be a PAC. But you're deliberately saying the major. In other words, if it is a major portion, that doesn't qualify. It must be the only reason for the organization's existence. It must be the major purpose. What's the difference between the major purpose and a major purpose? Well, the Fourth Circuit and LEAP dealt with that very issue, because that's what the statute there said, a major purpose. You could have multiple major. If it's a major purpose, you could have multiple major purposes. Here they use a primary purpose test. You can have multiple primary purposes. What the Fourth Circuit said is the major purpose, and you can only have one of those. And in MCFL, they explain that how do you determine an organization's major purpose? You look to, quote, its central organizational purpose, end of quote. There can only be one of those, central organizational purpose. And the other test, of course, is to the extent to which their spending becomes so extensive that you can say that that's their major purpose. Now, this court in California Pro-Life Council 1 and 2 accepted all this. That is that to become a PAC in a ballot measure issue, you have to have the major purpose of doing political speech, okay? Otherwise, it is true that the government has an interest in a one-time report on a specific political expenditure, and they can do that just by a one-time report. But you don't impose PAC burdens. I don't understand. I guess the way this case came up was that close to an initiative, you had proposed certain – your organization, your client, had proposed certain advertising or media blurbs that would discourage the issue. I think it was physician-assisted death, right? Yes. Encourage people to vote one way or the other on this initiative. So you would come under a different subsection of these regulations for that, wouldn't you? I mean, wouldn't you be considered to just be making an independent expenditure? Well, that is also a law that could be applicable. But it doesn't – you're making an argument, Tess, that this law transforms you into a PAC, but it really doesn't. It's only if, in connection with a particular ballot initiative, you propose to make independent expenditures that would encourage or discourage people voting in favor against that initiative. Anything is required, and that burden seems somewhat slim to me. If we do an expenditure and the trigger is de minimis, that violates your decision in Canon Ferry, that that is a ballot measure – you cannot be deemed to be a ballot measure committee with a de minimis trigger. So that's already – that's the law of this circuit, and it violates that. But if you do an expenditure, quote, in support of or in opposition to any ballot measure, you're deemed to be a political committee. Now, the courts in Washington have added a gloss, which is it is also one of your primary purposes, end of quote. So if you make a de minimis expenditure in support of, which includes they explain in their cases, it goes way beyond express advocacy. So it's, you know, you get the impression that they like the initiative or don't like the initiative. If you spend a de minimis amount of money on that, you meet the trigger. And if it's one of your primary purposes, and they explain in their pleadings that it is Human Life of Washington, it's one of their primary purposes, because in 1991, almost 20 years ago, they spent some money on a ballot measure. So they say we meet that, you know, a primary purpose, one of the many primary purposes an organization could have. So we are concerned that under their law, we would be a PAC. We are also concerned, it is true you mentioned, they also require independent expenditure reports. Now, this is different because it's a one-time, one-page report on a specific expenditure, not this comprehensive regulation of the organization. But there again, an independent expenditure is in support of or in opposition to a candidate. It is not limited to express advocacy, and they disclaim that specifically. And this court held in ACLU v. Heller that express advocacy is the only non-veg standard for political speech that you could actually, you know, know in advance whether or not you do it. So, yes, we are concerned that in addition to being deemed a PAC, in the alternative, we could also be required to file a one-page report on our issue advocacy, because it's either an independent expenditure or it could be deemed to be political advertising, and that is appealing directly or indirectly for votes or for financial or other support or opposition to any election campaign, which includes ballot measures. And then, or we could be deemed to have made a recommendation for or against a ballot measure. So there's a report there. So either, so through one of these three statutes, we could be required to file a report. Through the political committee definition, we could be deemed to be a PAC. And the U.S. Supreme Court has held that they have never found a compelling interest in regulating ads that would neither express advocacy or their functional equivalent, which is Wisconsin Right to Life II. And furthermore, that if a statute is vague, this court has held in ACLU v. Heller, that only express advocacy is a non-vague standard. Now, in that case, they- Counsel, you've gone way over your time. Do you want to wrap up? Oh, I'm sorry. Do you want to wrap up your point? Well, let me just say, to wrap up, that the, and express advocacy requires magic words, which the court in McConnell and Wisconsin Right to Life, and as for that matter, California Pro-Life Council I, interpreted the statute there to require express advocacy. And in McConnell and Wisconsin Right to Life, express advocacy was defined as magic words. So by going beyond express advocacy, Wisconsin Right to Life, in regulating issue speech, has done that. And they've done it through, intentionally, through interpretation of their statute, going beyond express advocacy, and also equally as importantly, has done so vaguely because the, for instance, in VEC, the Washington Supreme Court- Counsel, I thought you were going to wrap up. Okay. I'll give you a couple minutes to- One more statement. Well, okay, one more statement. In VEC, the Washington Supreme Court said that promoting or opposing a ballot measure means a broad contextual test that goes beyond express advocacy. And in Citizens United and Wisconsin Right to Life II, the court expressly held that broad contextual tests- You talk until you have to take another breath because you need to sit down. I'm fine, thank you. Thank you. May it please the court. My name is Nancy Crear. I'm here on behalf of state defendants. And with me today is Linda Dalton and Gordon Karg of the Washington State Attorney General's Office. This is a case about disclosure of the financing of Washington State campaigns. Those requirements provide transparency to the voters and enable them to follow the money in their election campaigns. Disclosure is a deep and critical part of the political electoral culture in Washington State. It originated with the passage of Initiative 276 in 1972 and remains as vibrant and embedded as part of the state's culture today. This circuit in Alaska Right to Life v. Miles upheld disclosure provisions similar to Washington's under a higher standard than we know is now required. All right. How do you respond to HLW's argument that you're turning them into a PAC? Two responses, Your Honor. First of all, since 1980, HLW does have a PAC. They formed it in order to. We know that. And that's not an issue in this case. They're a non-profit entity. The HLW itself. Right. And we would disagree with that argument for this reason. As was explained below and the district court noted, there's a very limited facts presented by Human Life of Washington. In fact, what it intended to do except for what was provided in the verified complaint. So there was no determination by the state. In fact, HLW has made itself a political committee at the district court level. Now, we have some activities that they said they were going to engage in or other activities, similar activities they might engage in, which might lead one to conclude, well, why are they essentially creating a new PAC and not using their current PAC? And to take that straight out of the complaint, Your Honor, Mr. Botten discussed that this is not about a ballot measure. Well, it is about a ballot measure. It's about Initiative 1000. So what was triggered? What would have been triggered? Would it have been if they had put on these ads before, within 21 days of the vote, would these requirements have been triggered? Or as soon as they announce they want to put these advertisements on the air, are they subject to the PAC requirements? Under our statute and our case law, Your Honor, once they had the expectation of raising contributions or making expenditures in support of or opposition to a ballot measure, they would have had two weeks to file as a political committee. Presumably, they know this. They've been filing for a number of years. But those requirements have been in place since Initiative 276 passed. So they could just, I'm just wondering, in analyzing the burden question of the PAC part, that the entity could just have easily used the PAC that exists to do those ads. So I'm trying to follow through. What's the real burden if they could just simply use the PAC? It's already meeting the obligations. They could have done that, Your Honor. They also could have, if they were the entity itself, Human Life of Washington, and engaging in independent expenditures and did not meet the statutory criteria for creating a new political committee, they would have filed what was called a C6 report, and that is a report of independent expenditures. And, by the way, also of electioneering communications, which we do have in Washington, on that report. So what's odd about today's argument is the fact that Human Life is saying, well, only one report is constitutionally sufficient, but no other reports are. They're also challenging the one report, which is the C6 report. And we do not agree, by the way, with Human Life of Washington's reading of Citizens United with respect to disclosure requirements. By an 8-1 vote, the court resoundingly upheld disclosure requirements as satisfying the First Amendment test that its court had previously stated. And they did not confine it. If you look at the language of Citizens United, it does not confine it only to the one report. Counsel, I want to make sure you get me back to Election Law 101 again. So what is the difference between strict scrutiny and exacting scrutiny? With regard to the provisions of Washington law here, what's the standard that we're testing them under? It's exacting scrutiny, Your Honor, which requires a substantial relation between the governmental interest and the information required to be disclosed. And this term, pact-like requirements, that was the subject of the prior argument, we would suggest to you that these registration and reporting requirements are disclosure. That is what makes disclosure real. Disclosure is not a concept on a cloud somewhere saying this is a good principle. In fact, disclosure is an on-the-ground real reporting of who are you, who are you affiliated, who do I contact if I have a question about making a contribution to you, or if I have a question about an expenditure. That's the C-1 report. It tells you who's managing the money, how to contact them, and all the basic sort of architecture of the beginning, the process of engaging in electoral activities. Then the other reports, the C-3 report, which is a contribution report, the C-4 report, contribution and expenditure, and the C-6, as I've mentioned, independent expenditure, these are the reports that people file with the Public Disclosure Commission. These are the reports that are accessed on the database, both the actual reports, so if you can say, gee, I don't know, I'm not interested in their prior reports, I only want a particular report. And these are the reports that the data is pulled from and put into a searchable database so that voters can not only see what's going on at a particular point in time with the committee, but say to themselves, gee, I wonder, you know, what other activities this committee's been engaged in, or how many committees are there supporting or opposing Initiative 1000. So both the View the Actual Reports function and the Access the Database function make disclosure real. And it's uncontested in this record, those reports and that data is accessed. Millions of pages have been accessed by the public. We have about 17,000 or so visitors to our website each month. Is the government's interest different if it's unambiguous campaign activity as opposed to issue advocacy? Two responses, Your Honor. First, unambiguously campaign-related activity is not the constitutional test here. There's some wishing and hoping on behalf of human life that you adopt this new test, which would be the first in the country to do so, but that's not the test. I think, though, in response to my second response, is the issue advocacy question here is a bit of a red herring for two reasons. First, in their complaint, Human Life of Washington makes it very clear that the activities that they want to engage in are opposition to Initiative 1000. There is no doubt looking at their briefing and looking at what they have pled. But secondly, what the U.S. Supreme Court recently said in Citizens United is that disclosure requirements are not confined to speech that is the functional equivalent of express advocacy. So the court has resolved this issue with respect to can there be disclosure behind express advocacy, and the answer in the 8-1 vote was yes. You see, because I guess magic words then wouldn't be required. Magic words has not been required since the court in McConnell found that to be functional. So then the question becomes whether or not because you take advantage of the electioneering that's going on over an issue that you care about and you now start to perform your educational function that you care so dear about, by definition then you are engaged in express advocacy. There is no ability to be involved in issue advocacy close to a campaign. Is that the position? Well, I think what's pertinent here is the statutes that are being challenged all use the word support or oppose. So if you're engaged in political activities to support or oppose a ballot measure or a candidate, same with political advertising, same with independent expenditure, what Human Life of Washington has argued is, well, how would we know what that would mean in the context of a ballot measure? And we would suggest to you that this is well-settled law. Both McConnell and the Voters Education Committee decision of the Washington State Supreme Court found those terms to be clear and rejected an argument that someone would not know from reading these words what to do. But secondly, thirdly, excuse me, this has been conceded by Human Life of Washington. If you look at their brief on page 44, note 30, they've conceded McConnell has found these words not to be unconstitutionally vague. But lastly, the record shows that both their executive director and his deposition was able to define the terms, and Human Life of Washington has used them over the years in various outreach activities, including on Initiative 119. So if there was no initiative going on, if there were no initiative going on involving physician-assisted death or some other issue that Human Life of Washington is interested in, and they put up these same commercials, no election going on, there would be no problem. They wouldn't have to register, would they? The ballot measure is critical, Your Honor, and under Washington laws from the time it's filed with the election official before the signature gathering phase. Elections are about time. There's a reason a primary is on a particular date. There's a reason a general election is on a particular date. Does that mean your answer to Judge Wardlaw's question is yes? Yes. But isn't it, I once talked to a politician and they told me they're always running for office. Aren't there some issues that are always coming up for consideration or always it's a political issue? Isn't the nature of the issue, such as the right to life or physician-assisted suicide, such that you can never say that it's unconnected with the body politic? This was answered in United States v. Harris, Your Honor, and in that case the U.S. Supreme Court upheld disclosure requirements of who is lobbying to seek to affect legislation. That was cited in Fritz v. Gordon, the Washington State Supreme Court upholding these disclosure requirements, and cited again most recently in Citizens United. So the question is, well, there might be all kinds of candidates who are constantly working on matters that may or may not become legislation, but here we know there was legislation, legislation proposed, and in this case because it was a direct democracy effort as opposed to going through their representatives, the lobbying was occurring directly to the people who would be voting on it, and Harris says it's perfectly constitutional to uphold disclosure for those kinds of activities. Are you at all worried about the breadth of this with the word expectation as being a part of the language? No, Your Honor. Our courts have looked at the expectation or statutes of elements. For example, if you're a candidate and you are reserving a room in order to announce your candidacy, you're starting to raise money, you file the paperwork with your declaration of candidacy. Vicki Rippey's testimony in her declaration provides other indicators of expectation. One of them certainly would be you're asking people for money. At that point you're expecting to receive it. So it would depend upon some later definition of what that expectation term means? Well, no, we believe that a person or an entity's activities fall within what our courts have construed to be expectation. They fall comfortably within, as the district court I think said, the Washington courts have provided concrete criteria to help people see whether their activities fall within the reportable area. And on this point, because we are talking about reporting and we're talking about disclosing, I think it's important to remember that Citizens United, in cases before it, certainly the State Supreme Court and Voters Education Committee held that disclosure requirements do not chill anyone from speaking. What's interesting about Human Life of Washington's arguments here today is that after being in Washington and falling within the statutory and regulatory scheme for several generations potentially, all of a sudden now it's unclear. And we would suggest to you that in fact there is nothing in the record nor the case law to bolster Human Life of Washington's challenges to the three statutes and the one rule at issue here today.  The initiative was in 1972. I believe it went into effect in 1973. 4217-100, which is the independent expenditure requirement, originated in 1972. It's been tweaked, as many of these statutes have, over the years by the legislature. The rule that's being challenged, the rating and endorsements rule, was adopted, I want to say 1976, and it was last amended in 2007. So these have been on the books for quite some time. So in answer to my fundamental concern, Washington does not argue that it has a legitimate informational interest in imposing disclosure requirements on pure issue advocacy. I think our disclosure requirements as articulated in statute and rules say what the disclosure provisions are for Washington. But that is not to say that since Citizens United says disclosure requirements can be applied to language, to activities that does not constitute express advocacy, I can't comment on how far the court might have gone. I can only talk about what is in the four corners of Washington's disclosure regime. And in that respect, we have in support or oppose language that helps people start to think about, you know, what am I doing here? Am I raising money? Am I spending money? What is it for? And those have been articulated both by our legislature, the people acting directly as legislators, and our courts. If I may turn to a couple of counsel's other arguments in the time I have remaining, counsel relies heavily on Wisconsin Right to Life II, known as WERDL II in the campaign finance shorthand. And we would like to note that that was a challenge to a federal funding of electioneering communications as applied to ads regarding the filibuster of federal judicial nominees. It's important to note that in Citizens United, the court made clear that it was not a disclosure case. In fact, WERDL was not intended to be a disclosure case because, of course, WERDL conceded the disclosure interest before it got to the Supreme Court. And in fact, if you look at the amicus brief filed on our behalf, you'll note that that disclosure was specifically not challenged in the Wisconsin Right to Life case. So we would suggest to you that it offers no basis for Human Life of Washington to engage in secret campaign activities, both raising money and expending funds to support or oppose a campaign. I'd like to comment that because these issues are so complex and important, like I would hope the chief judge, if you wanted, would, I mean the presiding judge, would give you... You elevated me. Well, thanks for thinking of it that way. I would hope the presiding judge would give you some extra time if you needed to get through all the issues because Mr. Bopp went more than five minutes past his time. At the same time, I would actually like to hear Mr. Bopp, even though he's over time, in a couple of minutes of rebuttal. So that's my preference. I have only two more points to make, Your Honor, and then if I may, I'd be happy to sit down. The first is, as we were talking about these reports, it's important to note that these reports reveal that millions of dollars have been raised and spent in initiative campaigns in Washington, and as noted, they are accessed by voters constantly. And I think in today's era, where we have people voting by mail now in 38 of 39 Washington counties, we have overseas voters, we have a population that does not show up at the polls in order to cast their vote. Having this information accessible from where you happen to be voting, where you are engaging in your civic duty, is really strengthened by the disclosure requirements and the reporting requirements that are being challenged here today. Here's a concern, and it may not be a strong concern, but it is a concern, and that is there is two levels to the disclosure. First, that an initiative or an issue is supported by an organization, and the other is a requirement that the organization disclose its supporters. And so this is a disclosure requirement that is broader, and in NAACP versus Alabama, the concern that the court had there that requiring the disclosure, not that the NAACP was supporting an action, but who the members were, might impinge upon the freedom of those people to support the NAACP. Is that a legitimate concern here? Not in this case, Your Honor. There is no allegation in the complaint, nor was there anything put in the record that disclosure somehow resulted in the threats, harassment, and the kind of criteria that the U.S. Supreme Court has looked at in NAACP, Brown versus Scalia. Well, how about not just threats, but just the freedom to be anonymous with respect to your support of this organization? Well, I think the U.S. Supreme Court probed that last week in Doe v. Reed, where Justice Scalia said that there is a, and I'm not quoting him exactly here, but there is a rough and tumble of democracy, that it is not for the faint of heart, and there are times when it may not be your preference to be out there in the public arena, but that is not consistent with our democratic ideal, and it's certainly not consistent with the 72 percent of the Washington voters who supported Initiative 276. Counsel, since you raised the mention of Doe v. Reed, I had on my mind the question whether we should be deferring our resolution of this case until we see whatever new wisdom the Supreme Court adds in Doe v. Reed, but also I didn't know if a delay in this case for that reason could be a problem. Three points, Your Honor. First of all, we think the Ninth Circuit got it right in Doe v. Reed in upholding the disclosure requirements in a different part of the initiative, which was the Public Records Act. We're dealing with the campaign finance. That's my question. Do the Washington regulations at issue here have similar identification requirements? There are different provisions not contested here. Well, let me take that back. Part of what you have to disclose under 08-0 and 09-0 are contributor names, but also addresses. Names, amounts, and addresses. Correct. It would be disclosed as part of the disclosure requirements for HLW. Correct. Individual identities. So this case probably is or could be affected by. Well, I don't think Mr. Bopp agrees, because if I may, the first question Justice Scalia asked Mr. Bopp in oral argument, and this is from the transcript on the Supreme Court's website, is, Justice Scalia, what about requiring disclosure of campaign contributions? Mr. Bopp, well, Justice Scalia, do you think that is unconstitutional? Mr. Bopp, this Court has upheld the disclosure in Buckley v. Galeo in 1976. So the first response is we don't think it's affected, because we think the Ninth Circuit got it right. We agree with the disclosure with respect to initiative 76. I think if we have reached an agreement among our panel that we should issue an opinion and not wait for the Supreme Court. I don't think you need to wait. I think Mr. Bopp has conceded that Bellevue-Reed was not a campaign finance disclosure case. And if I may, it's not in the record, but Human Life has been filing the report since the preliminary injunction was denied. So with respect to timing, it would not affect anything active in this case. Well, this case, I mean, one argument that could be made is that it's moot, given that everything in this case pertains to an initiative long past, but obviously we would find an exception under the capable repetition here. So is there anything else that is hanging on an immediate decision of this court in this case? No, Your Honor. The preliminary injunction was denied. The Human Life of Washington summary judgment motion was denied. Therefore, it is status quo as far as the state of Washington is concerned. People are reporting. People are filing reports. And this case so far has not presented an impediment to the disclosure requirements in Washington law. Right. Right. But if they're filing reports pursuant to an order, like an injunction, then the case wouldn't be moot, right? They're filing the reports pursuant to their failure to establish that an injunction was necessary in order to stop the enforcement of the law. So they're filing it pursuant to the law after not getting their injunction. They are filing it pursuant to the law, and the injunction, because it was denied, has not presented an impediment, as far as I know, to them or anyone else filing. Well, I mean, I guess it would help me to hear a yea or nay. Do you think this case is moot or not? The election's come and gone, yes. Is it capable of repetition yet evading review for these typical kind of campaign cases? Yes. It is capable of repetition yet evading review. And, therefore, it's not moot. The law student's gone, but we always teach them to answer the questions. I was wanting to make clear that because this is a campaign finance case and campaigns come and go, I did not want to overstep that all First Amendment cases are automatically somehow moot or not. So thank you for your time. Mr. Bob, you have two minutes for rebuttal. Thank you for the additional time, and I'm sorry I misread my thing. I thought I was all right before. Would you tell us whether you think we should defer this case pending Doe v. Reed? No, I don't think so. The case Doe v. Reed will not elucidate the First Amendment standards for when an organization can be deemed to be a PAC, nor will it elucidate the scope of one-page reports, that is, when can they be required. So, no, I don't see it bearing on these issues. Now, the unambiguously campaign-related principle has been employed by the court to limit the application of law directly to what is related to campaign speech. And part of the reason, the court in Buckley explained, was protect issue advocacy and protect issue advocacy organizations. And, of course, part of the rationale that the court articulated, and they cited NAACP v. Alabama, part of the rationale is that unwarranted or unjustified disclosure can chill speech, generally. So they want it to be limited to that which the state can assert a legitimate interest. So let me show you the difference. You have a $1 million organization that spends $10,000 on an independent expenditure. If they're required to file a one-page report as the Supreme Court upheld in Citizens United, then the disclosure interest is met because the political speech is reported. Now, if, however, they're deemed to be a PAC, then they have to also report $990,000 of expenditures and contributions that are not political speech. What's the government interest in that, in having that reported? Now, the way the court reconciled this in both Citizens United and MCFL and Buckley and Austin was the major purpose test. So if the political expenditures of the organization were $600,000, then the organization's purpose is campaign-related, meets the unambiguously campaign-related principle, and therefore you can require disclosure of all their activity. That's how they reconciled it. It boiled down to that HLW can choose or not to choose, or choose not to participate in elections by supporting or opposing candidates or ballot initiatives. And if it chooses to participate in an election, then it's subject to these requirements. But if it was to remain its nonprofit out of the fray status and not have these burdens, it can choose to do that as well. Right. And that is, of course, true. They can choose to or not to. But the First Amendment protects their right to choose to do that from unwarranted government regulation. So it's the First Amendment that protects the choice. So if they choose to participate, that choice is protected by the First Amendment, by these limitations, by the major purpose test, by the express advocacy test that distinguishes opposition of assisted suicide, which is what they wanted to do, from explicit words of advocacy to vote for or against the initiative, which can be regulated in terms of filing a one-page report. But this law goes beyond that. Thank you very much. Thank you very much, counsel. Is there any further? No. Okay. HLW versus the state of Bremsicle will be submitted, and this court is adjourned for today. All rise.
judges: Ware, Wardlaw, Gould